Thomas James Hand, III was indicted under § 13A-8-3, Code of Alabama 1975. The indictment alleged that he did "knowingly obtain or exert unauthorized control over a motor vehicle, to-wit: a 1977 Pontiac Grand Prix, the property of James Searcy, with the intent to deprive the owner of his property." The jury returned a verdict of "guilty of theft of property in the first degree as charged" and the trial court sentenced Mr. Hand to fifteen years' imprisonment pursuant to the Habitual Felony Offender Act.
It was undisputed at trial that on March 24, 1982, Thomas Hand had a wrecker attached to James Searcy's automobile and had it towed away. The car was in the parking lot of Snell's Lawnmower Service and Mr. Searcy was inside the place of business. An employee of Snell's came into the business and told Mr. Searcy that someone was about to tow his car away. Mr. Searcy went outside and saw Mr. Hand beside the car and asked him what he was doing. Mr. Hand informed him that Mr. Robert Baker, the lien holder of the automobile, had asked him to repossess the car because he (Searcy) was behind on his payments. Mr. Hand also informed Mr. Searcy that there was a federal warrant out for his (Searcy's) arrest. After Mr. Searcy retrieved some personal property from the car, Mr. Hand towed it away.
The state's theory of the case is that the appellant, Mr. Hand, transported the automobile from Snell's Lawnmower Service to an undisclosed location "with the intent to deprive the owner of his property," and did so by exerting unauthorized control over the vehicle.
Mr. James Searcy testified that Mr. Hand did not have his permission to take the automobile, but he did not try to stop him because he knew that he was behind on his payments. He testified that Mr. Baker called him and told his wife that Mr. Hand did not have the authority to repossess the automobile. He stated that Mr. Baker told him to get in touch with the police and get his car back.
Mr. Robert Baker testified that Thomas Hand called him. He stated that Mr. Hand asked him if he wanted Mr. Searcy's automobile repossessed. He further stated that he told Mr. Hand not to repossess the car. He said that approximately two days later Mr. Hand called him again and told him that he had repossessed the car. He further stated that Mr. Hand wanted $500 as his fee for repossessing the car. He stated over and over again that he did not give Mr. Hand the authority to repossess Mr. Searcy's car.
The appellant theorizes that, although he did take Mr. Searcy's automobile, he did so under the authority of Mr. Baker, who had the power to authorize such an act.
David Shepherd, an attorney who was handling details of the repossession for the appellant, testified that the appellant told him he had a contract with Mr. Baker to repossess Mr. Searcy's car. He stated that he sent Mr. Baker several letters asking for payment of the $500 fee. He stated that he got a response from Mr. Baker stating that he did not authorize Mr. Hand to repossess the car. He further stated that he talked with Mr. Baker on the telephone several times, and on each occasion Mr. Baker denied giving the authority for the repossession.
Paula Turner was called to testify to a telephone conversation she overheard between Mr. Hand and Mr. Baker. Her testimony *Page 673 
was not allowed based on hearsay objections.
The appellant testified that in his conversations with Mr. Baker, he was authorized to repossess Mr. Searcy's automobile. He further stated that Mr. Baker had agreed to pay him a $500 fee for the repossession.
 I
The appellant properly questioned the sufficiency of the evidence in his motions for judgment of acquittal and for a new trial. He argues that the trial court committed reversible error in denying his motions based on allegations that the state failed to present a prima facie case.
We have carefully reviewed the evidence in this case and have concluded that, while the appellant presented a defense which, if believed by the jury, might have justified his conduct, there was sufficient evidence to support the jury's verdict.
The critical questions in this case were whether the appellant exercised "unauthorized control" and whether he had an "intent to deprive." These questions were properly put to the jury which had the "responsibility of assessing the credibility of each witness and weighing all the evidence, whether direct or circumstantial, as they viewed it." Cumbo v.State, 368 So.2d 871 (Ala.Cr.App.), cert. denied, 368 So.2d 877
(Ala. 1978); McBryar v. State, 368 So.2d 568 (Ala.Cr.App.), cert. denied, 368 So.2d 575 (Ala. 1979); Crowell v. State,389 So.2d 545 (Ala.Cr.App. 1980). Moreover, a conflict in the testimony is the sole province for the jury to determine. Mayv. State, 335 So.2d 242 (Ala.Cr.App. 1976); Barbee v. State,395 So.2d 1128 (Ala.Cr.App. 1981); Walker v. State,416 So.2d 1083 (Ala.Cr.App. 1982). The trial court correctly denied the appellant's motions.
 II
The appellant contends that the trial court erred in sustaining objections by the state to the testimony of Paula Turner. Specifically, the appellant argues that Ms. Turner's testimony regarding what she overheard in a telephone conference between the appellant and Mr. Baker was admissible and not in violation of the hearsay rule.
In review of the testimony in this case, we must agree with the appellant on this point. Ms. Turner should have been allowed to testify that she heard Mr. Baker tell Mr. Hand that he could repossess the automobile.
The hearsay rule applies only to extrajudicial statements offered for the truth of the matter asserted. Such a statement offered for some other purpose is not hearsay. Thornton v.State, 369 So.2d 63 (Ala.Cr.App. 1979); Cory v. State,372 So.2d 394 (Ala.Cr.App. 1979); Epps v. State, 408 So.2d 562
(Ala.Cr.App. 1981).
 "Whenever an utterance is offered to evidence the state of mind which ensued in another person in consequence of the utterance, it is obvious that not assertive or testimonial use is sought to be made of it, and the utterance is therefore admissible, so far as the hearsay rule is concerned." 6 J. Wigmore, Evidence, § 1789 (Chadbourn Revision 1976).
Nicholson v. State, 369 So.2d 304 (Ala.Cr.App. 1979). Furthermore, this rule is also stated in C. Gamble, McElroy'sAlabama Evidence, § 273.02 (3rd ed. 1977):
 "If it is material to prove that a person at a specified time had been put on notice about a matter, or entertained a specified belief, acted in good or bad faith, had a specified motive to do or not to do an act or to do an act with a specified motive, or was mentally deranged, proof that a statement was made to him prior to the time in question which was reasonably calculated to create, and which is offered for the purpose of showing, notice, belief, good or bad faith, motive or mental derangement is not violative of the Hearsay Rule."
Nicholson v. State, 369 So.2d 304 (Ala.Cr.App. 1979).
However, although we do agree that the trial court was in error, the evidence which was sought to be elicited from Ms. Turner *Page 674 
was admitted through the testimony of the appellant. "[T]he erroneous exclusion of evidence in the first instance can be cured by the subsequent disclosure of substantially the same facts." Smith v. State, 393 So.2d 529 (Ala.Cr.App. 1981);Shorts v. State, 412 So.2d 830 (Ala.Cr.App. 1981). Therefore, although the exclusion of Ms. Turner's testimony was error, it was harmless error. A.R.A.P. 45; such was cumulative.
 III
The appellant argues further that the trial court abridged his Fifth Amendment privilege against self-incrimination and compelled him to testify when it disallowed Ms. Turner's testimony. In Fuller v. State, 269 Ala. 312, 113 So.2d 153
(1959), the Alabama Supreme Court held that before an appellate court will review an alleged violation of one's constitutional rights, it must first be "raised seasonably in the trial court." This court has consistently followed this ruling.Barclay v. State, 368 So.2d 579 (Ala.Cr.App.), cert. denied,368 So.2d 581 (Ala. 1979), cert. denied, 444 U.S. 928,100 S.Ct. 269, 62 L.Ed.2d 185 (1979); Frye v. State, 369 So.2d 892
(Ala.Cr.App. 1979); Hollis v. State, 380 So.2d 409 (Ala.Cr.App. 1980). In the present case the record contains no objection to the alleged violation of the appellant's constitutional rights. Therefore, no error had been preserved for review.
 IV
The appellant's final contention is that the trial court committed reversible error by denying a mistrial when a prosecution witness and two jurors were seen conversing during a recess.
It is well settled in Alabama that mere conversation between a juror and another person not a juror does not, by itself, constitute error. Dill v. State, 5 Ala. App. 162, 59 So. 307
(1912); Mullins v. State, 24 Ala. App. 78, 130 So. 527, cert. denied, 222 Ala. 9, 130 So. 530 (1930); Ballard v. State,28 Ala. App. 346, 184 So. 259 (1938). "The prejudicial effect of communications between jurors and others, especially in a criminal case, determines the reversible character of the error. Whether there has been a communication with the juror and whether it has caused prejudice are fact questions to be determined by the court in the exercise of sound discretion."Gaffney v. State, 342 So.2d 403 (Ala.Cr.App. 1976), cert. denied, 342 So.2d 404 (Ala. 1977); Graham v. State,339 So.2d 110 (Ala.Cr.App.), cert. denied, 339 So.2d 114 (Ala. 1976);Simms v. State, 56 Ala. App. 156, 320 So.2d 89 (1975). Moreover, such a ruling by the trial court will not be overturned absent a showing of abuse of discretion. Gaffney v. State, supra;Graham v. State, supra; Harper v. State, 395 So.2d 150
(Ala.Cr.App. 1981).
In this case, the trial court immediately questioned the jurors involved in the conversation and Mr. Baker, the other party involved. All three stated that they simply were talking about football, and no mention was made of the case being tried. The court also heard testimony on this incident at the hearing on the motion for a new trial. It was the trial court's determination that this short conversation had no prejudicial effect on the appellant, and after reviewing the transcript we can find no abuse of discretion on the part of the trial court. Therefore, no error had been committed.
The judgment of the trial court is due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 675